Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HUGO R.,<br><br>    Plaintiff,<br><br>    v.<br><br>COMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No. 22-3581 (ES)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Plaintiff Hugo R. ("Plaintiff" or "Claimant") appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits and supplemental security income (together, "disability benefits") under Title II and/or Title XVI[1] of the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq.* (*See* D.E. No. 10 ("Moving Brief" or "Mov. Br.") at 4). The Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court **VACATES** and **REMANDS** the decision of the Commissioner.

I.   BACKGROUND

On January 30, 2019, Plaintiff filed applications for disability benefits based on disabilities beginning on November 2, 2018. (*See* Mov. Br. at 4). He alleged disability based on several

---

[1]   Disability insurance benefits are governed by Title II of the Act and 20 C.F.R. Pt. 404; supplemental security income is governed by Title XVI of the Act and 20 C.F.R. Pt. 416. As the Commissioner identifies, (*see* Opp. Br. at 5 n.1), with exceptions not relevant to this case, the provisions governing disability insurance benefits and supplemental security income are substantially identical. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) ("For simplicity's sake, we will refer only to the Title II provisions, but our analysis applies equally to Title XVI.").

"severe impairments," including orthopedic, psychological, and psychiatric conditions. (D.E. No. 1 at 1–2 ("Complaint" or "Compl.")). The Social Security Administration denied both Plaintiff's initial application and his request for reconsideration. (D.E. No. 5 ("Record" or "R") at 120–24 & 135–37). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") to review the application *de novo*. (*Id*. at 141–44). ALJ Dina R. Loewy held such a hearing on October 27, 2021. (*Id*. at 40–63). On December 23, 2021, ALJ Loewy "den[ied] disability on the grounds that plaintiff could perform other work at step 5 of the sequential evaluation." (*Id*. at 17–39). Plaintiff sought Appeals Council review. (*Id*. at 354–56). On April 7, 2022, "the Appeals Council concluded that there were no grounds for review." (*Id*. at 1–8).

Plaintiff filed the instant appeal on June 8, 2022, over which the Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). (*See generally* Compl.). On April 24, 2023, Plaintiff filed a brief in support of this action. (*See generally* Mov. Br.). On June 26, 2023, the Commissioner opposed. (D.E. No. 13 ("Opp. Br.")).

**II.     LEGAL STANDARD**

   **A.     Standard Governing Benefits**

To qualify for disability benefits, a claimant must show that he or she is disabled within the meaning of the Act. 42 U.S.C. § 1382(a); 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *Fargnoli v. Massanari*, 247 F.3d 34, 38–39 (3d Cir. 2001). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(B); 42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B); 42 U.S.C. § 423(d)(2)(A).

To determine whether a given claimant qualifies as disabled, "[t]he Commissioner uses a five-step process." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520 & 416.920). "The claimant bears the burden of proof for steps one, two, and four[,]" and "[t]he Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).[2] If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends. *See* 20 C.F.R. § 404.1520(a)(4).

***Step One.*** At step one, the claimant must show that he or she has not engaged in any substantial gainful activity since the onset date of her severe impairment. 20 C.F.R. § 404.1520(a)(4)(i). If an individual engages in substantial gainful activity, he or she is not disabled under the Act, regardless of the severity of her impairment or other factors such as age, education, and work experience. 20 C.F.R. § 404.1520(b). If the claimant demonstrates he or she has not engaged in substantial gainful activity, the analysis proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4).

***Step Two.*** At step two, the claimant must show that his or her medically determinable impairments or a combination of impairments were "severe" as of the date of last insured ("DLI"). 20 C.F.R. § 404.1520(a)(4)(ii). An "impairment or combination of impairments" is not "severe"

---

[2] "Because step three involves a conclusive presumption based on the listings, no one bears that burden of proof." *Sykes*, 228 F.3d at 263 n.2 (citing *Yuckert*, 482 U.S. at 146 n.5).

unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)).

*Step Three*. At step three, the claimant may show, based on medical evidence, that his or her impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § Part 404, Subpart P, Appendix 1 ("Listings") as of the DLI. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant makes such a showing, he or she is presumptively disabled and entitled to benefits. *Id.* If he or she does not make the showing, he or she proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4).

*Step Four*. At step four, the claimant must show that he or she lacked the residual functional capacity ("RFC") to perform his or her past relevant work as of the DLI. 20 C.F.R. § 404.1520(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the claimant lacks the RFC to perform his or her past relevant work, the analysis proceeds. *Id*.

*Step Five*. In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his or her age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v); *see, e.g.*, *Plummer*, 186 F.3d at 428. If the Commissioner shows that the claimant can perform jobs that exist in significant numbers in the national economy, the claimant is not entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v).

**B.     Standard of Review**

The Court exercises plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence." *See* 42 U.S.C. § 405(g); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is "more than a mere scintilla" of

evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea*, 370 F.3d at 360. The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek*. *See Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla[.]'"(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

The Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). Thus, the Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Finally, while failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003). In other words, on appeal, a claimant bears the burden of showing not merely that the Commissioner erred, but also that the error was harmful. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

### III.   ALJ'S DECISION

At Step One, the ALJ found that Claimant has not engaged in substantial gainful activity since November 2, 2018, the alleged onset date. (R. at 25).

At Step Two, the ALJ determined that Claimant has the following severe impairments: "major depressive disorder, a schizoaffective disorder, a panic disorder with agoraphobia, and attention-deficit hyperactivity disorder." (*Id.*).[3]

At Step Three, the ALJ considered Listings 12.03, 12.04, 12.06 and 12.11 and determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed by the regulations. (*Id.* at 26).

At Step Four, the ALJ held:

> [T]hat the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant may never climb ladders ropes, or scaffolds. The claimant must avoid all exposure to hazardous machinery, unprotected heights, and operational control of moving machinery. The claimant is able to apply common sense to remember, understand, and carry out detailed but uninvolved instructions in the performance of simple, routine, and repetitive tasks. The claimant is limited to work in an environment free of fast-paced production requirements such as working on a conveyor belt and involving only simple work related-decisions with few, if any, workplace changes. The claimant could endure no more than minimal superficial interaction with the public and only occasional interaction with supervisors. The claimant could work in proximity of co-workers, but generally not working together with them on the same task.

(*Id.* at 28). In making this determination, the ALJ considered that "the [C]laimant noted that he has no difficulty in personal care, is able to cook for himself, can discharge most household chores, and is able to shop with his mother. Additionally, the [C]laimant is able to handle paying bills and

---

[3] The ALJ noted that Claimant's allegations of a degenerative disc disease "constitute[d] a non-severe impairment." (R. at 26). However, the ALJ "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (*Id.*)

a checkbook, although the claimant endorsed problems with concentration, memory, understanding, following instructions, and getting along with others due to his symptoms." (*Id*. at 29). In short, the ALJ found that the Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id*.). The ALJ further considered Claimant's history of psychiatric care and a series of examinations. (*Id*. at 29–30).

Finally, at Step Five, "[c]onsidering the [C]laimant's age, education, work experience, and residual functional capacity," the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id*. at 33). The ALJ relied on a vocational expert who testified that, given all these factors, Claimant could hold the following occupations:

> (1) Marker (DOT Code 209.587-034, classified as light work, with a skill level of SVP 2, and with 131,229 positions in the national economy)
>
> (2) Kitchen Helper (DOT Code 318.687-010, classified as medium work, with a skill level of SVP 2, and with 17,261 positions in the national economy)
>
> (3) Cleaning House Keeping (DOT Code 323.687-014, classified as light work, with a skill level of SVP 2, and with 193,895 positions in the national economy)[.]

(*Id.*) Accordingly, the ALJ found that Plaintiff had not been disabled as defined by the Act at any time from November 2, 2018, the alleged onset date, through December 29, 2021, the date of the ALJ's decision. (*Id*. at 34).

## IV.     DISCUSSION

On appeal, Claimant raises several arguments in opposition to the ALJ's disability determination—although he does not challenge the ALJ's determinations on Steps One and Two. (*See generally* Mov. Br.).  As for Step Three, Plaintiff argues that the ALJ erred with respect to each Listing she considered:  Listings 12.03, for "Schizophrenia spectrum and other psychotic disorders"; 12.04, for "Depressive, bipolar and related disorders"; 12.06, for "Anxiety and obsessive-compulsive disorders"; and 12.11, for "Neurodevelopmental disorders."  (R. at 26–27).  To satisfy Listings 12.03, 12.04, and 12.06, Claimant may meet the requirements of "both paragraphs A [("Paragraph A")] and B [("Paragraph B")], *or* the requirements of both paragraphs A and C [("Paragraph C")]."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00A2 (emphasis added).  To satisfy Listing 12.11, Claimant must satisfy both Paragraph A and Paragraph B; Paragraph C is inapplicable.  *Id.*[4]  The Court considers the ALJ's analyses of Paragraphs B and C in turn.[5]

***Paragraph B***.  For a claimant "[t]o satisfy the paragraph B criteria, [his or her] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00A2b.  The four areas of functioning include:

> 1. Understand, remember, or apply information.
> 2. Interact with others.
> 3. Concentrate, persist, or maintain pace.

---

[4]     *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00A2b ("When we refer to 'paragraph B criteria' or 'area[s] of mental functioning' . . . we mean the [identical] criteria in paragraph B of every listing except 12.05."); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00A2c ("When we refer to '[P]aragraph C' . . . we mean the [identical] criteria in [P]aragraph C of listings 12.02, 12.03, 12.04, 12.06, and 12.15.").

[5]     The ALJ did not consider Paragraph A.  (*See* R. at 26–27).  But this is of no moment.  *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) ("[T]he omission of the '[P]aragraph A' analysis does not render the ALJ's decision unreviewable. It is quite plain that the ALJ's decision rested on the absence of both "[P]aragraph B" and "[P]aragraph C" criteria."); (*see also* Mov. Br. at 12 n.3).

> 4. Adapt or manage oneself.

*See, e.g.*, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04B (citation modified).[6] For the four Listings she considered, the ALJ held that Claimant has a "moderate limitation" in each domain. (R. at 26–27). With respect to the first three domains—understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining place—the Court finds no issue with the ALJ's determination, as the ALJ considered factors consistent with 12.00E. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E.

However, the ALJ erred in assessing the fourth domain: Claimant's ability to adapt or manage himself. The ALJ wrote:

> As for adapting or managing oneself, the claimant has experienced a moderate limitation. In his Function Report, the claimant noted that he has no difficulty in personal care, is able to cook for himself, can discharge most household chores, and is able to shop with his mother. Additionally, the claimant has no difficulty performing personal care, is able to handle money, is able to occasionally interact with others, although the claimant endorsed problems with concentration memory, understanding, following instructions, and getting along with others due to his symptoms. However, the undersigned takes note of the claimant's reported symptoms such as feelings of helplessness and hopelessness, delusions, paranoia, shortness of breath, and other anxiety related symptoms as well as the claimant's January 21, 2019 hospitalization following a suicide attempt in according the claimant a moderate limitation in this domain.

(R. at 27 (citation modified)). Meanwhile, 12.00E4 calls for a different analysis:

> *Adapt or manage oneself (paragraph B4).* This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being ***in a work setting***. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others;

---

[6] 12.00E establishes the abilities an ALJ should consider under each of the four areas of functioning. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E.

> maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

(20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E4 (emphasis added)).

Claimant's ability to "cook for himself," perform "household chores," and "shop with his mother" does not illustrate his ability to "regulate emotions, control behavior, and maintain well-being"—specifically in a "work setting." (R. at 27); *see, e.g.*, *Andrew S. v. Comm'r of Soc. Sec.*, No. 18-17212, 2022 WL 795746, at *4 (D.N.J. Mar. 16, 2022) (holding that neither a claimant's "ability to care for his children" nor "go out alone" were probative of his ability to regulate his emotions, control his behavior, or maintain his well-being in a work setting, because "[s]uch acts do not appear to be deviations from his routine."); *Caren C. v. Bisignano*, No. 23-2794, 2025 WL 1378732, at *9 (D.N.J. May 13, 2025) ("[T]he ALJ concluded at step three that Plaintiff was only moderately limited in the area of adapting or managing herself, because she was appropriately dressed and groomed for appointments, was cooperative with medical staff, was generally compliant with prescribed treatment[,] . . . went shopping twice a month, performed some household chores, and could handle her finances. Without more explanation, the Court cannot understand the ALJ's reasoning in this regard." (citation modified)). Put another way, in weighing a claimant's abilities to adapt and maintain himself under Paragraph B, an ALJ may not take "evidence of [a claimant's] at-home routine" and "imput[e] it, without explanation, into [that claimant's] ability to adapt and manage himself in a **work setting**." *Andrew S.*, 2022 WL 795746, at *4 (emphasis added). For that reason, "[w]ithout more explanation as to how [these] activities *would translate to the workplace*, [Claimant's] daily in-home activities . . . are not substantial evidence that [he] is not disabled." *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 212 (3d Cir. 2019)); *see also Naomi W. v. O'Malley*, No. 22-3393, 2024 WL 1928477, at *8 (D.N.J. May 1,

2024). That is precisely what the ALJ did here with regard to Claimant's ability to cook for himself and shop with his mother.

Nevertheless, the Court may only remand this matter if Claimant can show that a proper analysis would make a difference in this case. *Shinseki*, 556 U.S. at 409. Again, Claimant prevails: he "points out [that] there is evidence in the record" which, "if credited . . . could support his contention that he suffers from an extreme limitation in adapting or managing himself in a work setting." *Andrew S.*, 2022 WL 795746, at *5; (*see also* Mov. Br. at 20 ("Here is an acknowledgement of plaintiff's lack of attention, inability to concentrate and cloistered lifestyle resulting in self-isolation—all proof of plaintiff's inability to make an adjustment to the workplace.")). For instance, the ALJ herself noted (and yet did not properly credit) Claimant's testimony that he "suffers from depressive symptoms to the point where he desires to stay in bed, does not eat, and hears voices that compel suicidal ideation." (R. at 28). Further still, he experiences "panic attacks and anxiety related symptomology that caused him to quit his prior job," and reported during a psychological examination that "leaving the house exacerbates his panic attacks, which present as shortness of breath, shaking, and an accelerated heart rate." (*Id*. at 29). In other words, as in *Andrew S.*, *Naomi W.*, *Caren C.*, and others, Claimant has pointed to evidence in the record which, if properly considered in the context of a work setting, "could show a consistent pattern of behavior on the part of Plaintiff that shows he may not be able to 'independently, appropriately, effectively, and on a sustained basis' adapt or manage himself" in a work environment. *Andrew S.*, 2022 WL 795746, at *5 (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 1); *see also Naomi W.*, 2024 WL 1928477, at *8 (vacating and remanding an ALJ's Paragraph B determination where the record revealed "evidence of Plaintiff's inability to control her anger and anxiety in different work settings" and Plaintiff suffered from social anxiety and panic attacks).

Because an extreme limitation in the Paragraph B domain of adapting and managing himself would result in a finding that the paragraph B criteria of Listings 12.03, 12.04, 12.96, and 12.11 had been met, "the Court cannot conclude that the ALJ's omission, without explanation, of certain evidence and her failure to adequately explain her reasoning in connection with these mental functioning areas is harmless." *Caren C.*, 2025 WL 1378732, at *10; *see also Naomi W.*, 2024 WL 1928477, at *9 ("[T]he Court cannot conclude that the ALJ's failure to adequately explain [her] reasoning in connection with these mental functioning areas is harmless where an extreme limitation in one of those areas or a marked limitation in both of those areas would result in a finding that the paragraph B criteria of Listings [12.03,] 12.04, 12.06, and 12.11 have been met."). The Court therefore must remand for the ALJ to make specific findings of fact regarding Claimant's ability to adapt and manage himself in a work setting.[7]

***Paragraph C***.  For similar reasons, the ALJ must reconsider her analysis of Paragraph C. As applicable to Listings 12.03, 12.04, and 12.06, to satisfy Paragraph C, the claimant's "mental disorder must be 'serious and persistent'; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00A2c.  Claimant must also show evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [Claimant's] mental disorder; and

2. Marginal adjustment, that is, [Claimant has] minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life.

---

[7] "Moreover, remand is appropriate even if, upon further examination of the paragraph B criteria, the ALJ again concludes that Plaintiff has not met or medically equaled a listing and ultimately is not entitled to benefits." *Caren C.*, 2025 WL 1378732, at *10 (citing *Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020)).

*Id*. (citation modified).[8]

Considering Paragraph C, the ALJ wrote only the following:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. In order for the claimant to meet the requirements of paragraph C, the claimant must show that a mental disorder is serious and persistent, which is represented in a documented psychiatric treatment history at least two years in duration. Further, this treatment history must include findings that the claimant is undergoing mental health therapy, which diminishes the signs and symptoms of that mental health disorder. Furthermore, the claimant must demonstrate that they retain only a minimal capacity to adapt to changes in environment, or demands that are not part of the claimant's everyday life. Applied herein, while the records indicate that the claimant was hospitalized in January of 2019 the undersigned finds no conclusive evidence on record that the claimant has only a minimal capacity to adapt to changes in environment.

(R. at 27 (citation modified)).[9] Only the last sentence—the ALJ's conclusion there existed "no conclusive evidence on record that the claimant has only a minimal capacity to adapt to changes in the environment"—offers any analysis of the Paragraph C criteria beyond reciting its requirements.

To be sure, this Court must consider the ALJ's decision "as a whole." *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). However, even reading the record holistically, the Paragraph C analysis suffers from the same deficiencies as the Paragraph B analysis discussed

---

[8] The requirements for the first and second elements of Paragraph C are contained in 12.00G2b and 12.00G2c. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.00G2b & 12.00G2c.

[9] Claimant correctly identifies that Paragraph C does not require "conclusive evidence" of anything. (Mov. Br. at 14); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00A2c ("Your mental disorder in this listing category is 'serious and persistent;' that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is **evidence** of both [the requirements of Paragraph C(1) and C(2)]"). Because the Court remands the ALJ's disability determination to consider additional evidence relevant to Step Three, *see supra*, the Court does not address here whether the ALJ applied an inappropriately-heightened "conclusive evidence" standard. However, the Court cautions that Paragraph C merely requires the ALJ to find **evidence** of marginal adjustment—and not that any such evidence be "conclusive."

above. The marginal adjustment inquiry asks whether the claimant can adapt and change, and not whether the claimant can follow a daily routine—much like the fourth domain of Paragraph B. Indeed, Listing 12.00G2c provides:

> The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, **you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life**. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00G2c. Thus, for similar reasons as when assessing the fourth domain of Paragraph B, the ALJ erred when assessing Paragraph C; the ALJ, "without sufficient explanation, imputed Plaintiff's home routine into his ability to adapt and change." *Andrew S.*, 2022 WL 795746, at *5.[10]

Moreover, "[b]ecause the Court agrees that the ALJ erred at step three of the sequential analysis, the Court will not consider the other arguments with respect to step[] four." *Id.*, at *3

---

[10] Claimant additionally argues that the ALJ failed to consider his severe impairments in combination with one another. (Mov. Br. at 8–10). However, the ALJ began her Step Three analysis by noting that "[t]he severity of the claimant's mental impairments, considered singly ***and in combination***, do not meet or medically equal the criteria of listings 12.03, 12.04, 12.06 and 12.11." (R. at 26 (emphasis added)); *see also Saul M. v. Comm'r of Soc. Sec.*, No. 21-2339, 2022 WL 3444015, at *5 (D.N.J. Aug. 17, 2022) ("ALJ Shillin explicitly acknowledged that her decision at step three assessed the severity of the applicant's 'impairment or combination of impairments,' a recital which, if not undermined elsewhere, is entitled to some deference."). In other words, "the ALJ explicitly indicate[d] that [s]he [considered Claimant's severe impairments in combination] and there is 'no reason not to believe [her].'" *Granados v. Comm'r of Soc. Sec.*, No. 13-781, 2014 WL 60054 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel. Morrison*, 268 Fed. App'x at 189).

(first citing *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 156–57 (3d Cir. 2008); and then citing *Coleman v. Comm'r of Soc. Sec.*, No. 15-8839, 2019 WL 1594269, at *5 (D.N.J. Apr. 15, 2019)).

## V.     CONCLUSION

For the foregoing reasons, the Court **VACATES** and **REMANDS** the decision of the Commissioner.  An appropriate Order accompanies this Opinion.

**Dated: December 15, 2025**                                                         *s/ Esther Salas*
                                                                                                          **Esther Salas, U.S.D.J.**